UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2002 JUL -9  PM 3: 41

LORETTA G. WHYTE
CLERK

| | | |
|---|---|---|
| JULIAN BRIONES, III, Individually and on behalf of his minor son, CALIXTO BRIONES, | * * * * | CASE NO. 01-1792 |
| Plaintiffs, | * * | SECTION A-1 |
| v. | * * * | JUDGE:   JAY ZAINEY |
| GENUINE PARTS COMPANY, d/b/a NAPA AUTO PARTS, | * * * | |
| Defendant. | * | MAGISTRATE:   SALLY SHUSHAN |

## DEFENDANT GENUINE PARTS COMPANY'S
## OPPOSITION TO CLAIMANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

COMES NOW Defendant Genuine Parts Company d/b/a NAPA Auto Parts (hereinafter "GPC" or "Defendant"), and files this Its Opposition to Claimant's Motion for Partial Summary Judgment. As this Opposition details, Plaintiff has failed to set forth sufficient evidence to warrant a grant of summary judgment in his favor. Moreover, GPC has filed a Motion for Summary Judgment detailing the reasons it is entitled to judgment as a matter of law as to all of Plaintiff's claims.

## I.   STATEMENT OF THE CASE

Plaintiff Julian Briones III (hereinafter "Plaintiff") filed this action individually and on behalf of his minor son Calixto Briones on June 12, 2001. Plaintiff's Complaint claims, *inter alia*, that GPC violated the Family Medical Leave Act (hereinafter "FMLA") when Plaintiff was allegedly denied leave and then terminated for dishonesty after taking leave. (Plaintiff's Complaint, ¶¶ 12-13, 17.) Plaintiff has moved for partial summary judgment on the issue of liability as it relates to his FMLA claim. Claimant's Motion for Partial Summary Judgment

Page 1 of 15

Fee_____
Process_____
Dktd_____
CtRmDep_____
Doc. No._____

(hereinafter "Plaintiff's Motion") should be denied because Plaintiff has failed to prove that he was entitled to FMLA leave and failed to prove GPC engaged in some prohibited act as is required to support his FMLA claim.

## II.   STATEMENT OF THE FACTS

GPC is a Georgia corporation doing business in Louisiana as NAPA Auto Parts, and is engaged in the business of distribution and retail sales of replacement parts for automobiles. (Statement of Material Facts[1] (hereinafter "SMF") ¶1.) Plaintiff was employed by Temps Today, a temporary employment agency, in the capacity of truck driver from March 1999 through August 1999. (SMF ¶ 2.) On May 5, 1999, Plaintiff was assigned by Temps Today to GPC's Jefferson, Louisiana facility in the capacity of truck driver. *Id.* While an employee of Temps Today and assigned to the GPC facility, Plaintiff did not receive any holiday pay, vacation, health insurance, or any benefit that he would typically attribute to the workplace from GPC. *Id.* Rather, he received his compensation and benefits from Temps Today. *Id.*

Prior to August 31, 1999, Eddie LaPorte, GPC's Shipping Supervisor, informed Plaintiff that a driver position with GPC would be coming available. (SMF ¶ 3.) On August 31, 1999, Plaintiff completed an Application for Employment with GPC. *Id.* Thereafter, in September of 1999, Plaintiff was hired by GPC as a truck driver. (SMF ¶ 4.) Plaintiff typically worked the night shift for GPC, Monday through Friday, from September of 1999 until his termination in July of 2000. *Id.* As a driver for GPC, Plaintiff reported to Mr. LaPorte. Mr. LaPorte reported to David Bindom, Stockroom Manager, and Mr. Bindom reported to Robert Dennis, Service Manager. (SMF ¶ 7.) During his employment with GPC, Plaintiff considered Mr. LaPorte, Mr. Bindom and Mr. Dennis to be his supervisors. *Id.*

---

[1] GPC's Statement of Material Facts was filed on July 2, 2002 and attached to GPC's Motion for Summary Judgment as Attachment B.

After Plaintiff's employment with GPC began, Plaintiff was required to complete certain GPC paperwork and acknowledge certain policies and practices of GPC. (SMF ¶ 5.) In this regard, Plaintiff acknowledged receiving GPC's Honesty Policy on September 7, 1999, and understood that GPC had a firm policy regarding dishonesty and would not hesitate to discharge someone for dishonest conduct. (SMF ¶ 6.)

On Wednesday July 5, 2000, after Plaintiff's son Calixto Briones became ill, Plaintiff's wife directed Plaintiff to ask GPC for time off work to care for his three (3) healthy children while Plaintiff's wife remained with Calixto Briones in the hospital. (Edlyn Briones Affidavit, ¶ 7.)[2] On July 5, 2000, Plaintiff arrived at work and notified Mr. Bindom that he would need to be off work the following evening, Thursday July 6, 2000, because Plaintiff's son was in the hospital and, therefore, Plaintiff needed to stay home to care for his three (3) healthy children. (SMF ¶ 10; Plaintiff's Motion, p. 3.) As Plaintiff's Motion provides, Plaintiff's "thoughts turned to the other three children and their care." (Plaintiff's Motion, p. 3.) Indeed, at no point did Plaintiff tell any member of GPC management that he needed to be off work to care for Calixto Briones. (SMF ¶ 10.)

On the evening of July 6, 2000, Plaintiff stayed at home and watched his three (3) healthy children because he "didn't have anybody to take care of them." (SMF ¶ 11.) Plaintiff did not report to work for his evening shift on Thursday July 6, 2000. *Id.* On Friday July 7, 2000, Plaintiff did not report to work for his evening shift at GPC. (SMF ¶ 12.) Instead, on the evening of July 7, 2000 Plaintiff stayed home and cared for his three (3) healthy children. *Id.* Plaintiff was not scheduled to work at GPC on Saturday July 8, 2000, or Sunday July 9, 2000. (SMF ¶ 13.)

---

[2] The Affidavit of Plaintiff's wife, Edlyn Briones, is attached to Claimant's Motion for Summary Judgment as Exhibit B.

On the morning of Monday July 10, 2000, Eddie LaPorte called Plaintiff's home to speak with Plaintiff and was informed by a woman who answered the telephone that Plaintiff was not home but she would contact Plaintiff and have him call Mr. LaPorte.  (SMF ¶ 14.) Later on Monday July 10, 2000, Eddie LaPorte informed Peggy Rubio, Human Resources Manager, in her office that he was concerned because he had no truck driver to take one of the delivery routes that evening.  (SMF ¶ 15.)  When Ms. Rubio asked Mr. LaPorte why he did not have a driver, Mr. LaPorte responded that Plaintiff was out of work because his son was in the hospital and, as a result, Plaintiff requested time off work to baby-sit his other children.  *Id.*  Ms. Rubio asked Mr. LaPorte how long this had been "going on" and Mr. LaPorte responded, "since last week" and that Mr. LaPorte had given Plaintiff until the weekend to find a babysitter.  *Id.*  Ms. Rubio then told Mr. LaPorte to call Plaintiff since Plaintiff had been given "three work days and a full weekend to make arrangements for a sitter."  *Id.*

On July 10, 2000, while Mr. LaPorte and Ms. Rubio were still in Ms. Rubio's office, Robert Dennis walked by and Mr. LaPorte explained to Mr. Dennis that he did not have a driver for that evening because Plaintiff needed to stay home to baby-sit his children.  *Id.*  Mr. Dennis then asked Ms. Rubio for Plaintiff's telephone number and used one of the two (2) telephones in Ms. Rubio's office to call Plaintiff at home to see if he planned to be at work that evening.  (SMF ¶ 17.)  When Mr. Dennis dialed Plaintiff's home telephone number, Plaintiff's mother again answered the telephone and said Plaintiff was not home.  *Id.*

While Mr. Dennis was on the telephone with Plaintiff's mother, the second telephone in Ms. Rubio's office rang and it was Plaintiff returning Mr. LaPorte's call of earlier in the morning of July 10, 2000.  (SMF ¶ 18.)  Mr. LaPorte asked Plaintiff if he had found a babysitter and told Plaintiff that he needed him to drive the delivery route that evening.  *Id.*  LaPorte asked Plaintiff

where he was and then responded to Plaintiff, "You can't be home, where are you?" *Id.* Mr. Dennis turned around while he was still on the telephone with Plaintiff's mother and Mr. LaPorte, who was still on the telephone with Plaintiff, began pointing at the telephone and whispering "[Plaintiff] says he's at home!" *Id.*

Mr. Dennis then ended his conversation with Plaintiff's mother, took the telephone from Mr. LaPorte and said, "[Plaintiff], where are you?" (SMF ¶ 19.)   Mr. Dennis responded to Plaintiff by stating that he could not be at home because Mr. Dennis was just on the phone with Plaintiff's mom. *Id.* Plaintiff asked Mr. Dennis if Mr. Dennis was calling Plaintiff a liar and Mr. Dennis responded that someone was not telling the truth. *Id.* Plaintiff does not recall the entirety of the telephone conversation on July 10, 2000 that he had with Mr. Dennis, and does not recall whether or not Mr. Dennis asked Plaintiff where he was calling from or if Plaintiff asked Mr. Dennis if he was calling Plaintiff a liar. *Id.* Plaintiff's wife does recall that during this telephone conversation Plaintiff told Mr. Dennis that he could not work on the evening of July 10, 2000 because Plaintiff had to stay home and care for his three (3) healthy children. (Edlyn Briones Affidavit, ¶ 23.)

After Mr. Dennis ended the telephone conversation with Plaintiff on July 10, 2000, Mr. Dennis, Ms. Rubio and Mr. LaPorte had a discussion regarding their belief that Plaintiff had been dishonest with them regarding his whereabouts. (SMF ¶ 20.) After this discussion, the decision was made to terminate Plaintiff for dishonesty effective July 11, 2000. *Id.* After the decision had been made to terminate Plaintiff for dishonesty, Ms. Rubio typed a detailed memorandum regarding the events surrounding the reason for Plaintiff's termination and she, Mr. Dennis, and Mr. LaPorte all signed the memorandum. (SMF ¶ 21.) Ms. Rubio thereafter completed a

Separation Notice for Plaintiff and detailed that the reason for Plaintiff's termination was "dishonesty." *Id.*

On Tuesday July 11, 2000, while Calixto Briones was still in the hospital, Plaintiff made arrangements for his mother to baby-sit his three (3) healthy children. (SMF ¶ 22.) On the evening of July 11, 2000, Plaintiff went in to work at GPC and had a meeting with Mr. LaPorte at approximately 7:15 p.m. *Id.* During this meeting with Mr. LaPorte, Plaintiff was told that he was being terminated for dishonesty. *Id.* Mr. LaPorte never told Plaintiff that he was being terminated for requesting or taking a leave and never told Plaintiff he was being terminated due to any health care cost concerns of the Company. *Id.* At no point did any representative of GPC tell Plaintiff that he had been terminated for requesting or taking leave or due to any health care cost concerns of the Company. *Id.*

After Plaintiff's termination, Ms. Rubio received a letter from Children's Hospital dated July 12, 2000. (SMF ¶ 23.) The letter detailed, among other things, that "While Mrs. Briones is in the hospital with Calixto [Briones] Mr. Briones has been making arrangements for the care of the other three children." *Id.* The letter concluded by requesting Ms. Rubio, "reconsider your decision to fire Mr. Briones." *Id.* Ms. Rubio discussed the letter with Mr. Dennis who would not reconsider the termination decision because Mr. Briones had been terminated for dishonesty, not because he was arranging for the care of his three (3) children. *Id.*

GPC's Honesty Policy, which Plaintiff acknowledged receiving, provides in part that, "The Company has a very firm policy about Honesty and will not hesitate to discharge...any member of the organization who falsifies records, statements or claims..." (SMF ¶ 25.) Consistent with this Policy, if GPC believes that an employee has been dishonest, the employee is terminated, no lesser form of discipline is administered. *Id.* In addition to Plaintiff, GPC has

terminated employees Eric Vance, Chris Drummond, Brett Bennett, Lansley Dixon, Sabrina Green, and Donald Lemoine for dishonesty. (SMF ¶ 26) None of these individuals had requested or been on a personal, medical, or FMLA leave prior to their termination. *Id.* Moreover, numerous GPC employees at the Jefferson, Louisiana facility have requested and taken FMLA or medical leave. For example, Helen Smith, Brenda Robinson, Sharon Cooley, and Freddie Chaney have all taken FMLA or medical leave in the past. None of these employees were terminated for taking FMLA or medical leave and, in fact, all of these employees returned to their prior positions at the conclusion of their FMLA or medical leave. (SMF ¶ 30.)

## III.   ARGUMENT & CITATION OF AUTHORITY

### A.   Summary Judgment Standard.

Plaintiff has moved for summary judgment on his FMLA claim, a claim that he bears the burden of proof on at trial. As the Fifth Circuit has held, "when a party moves for summary judgment on an issue for which it bears the burden of proof at trial, it must demonstrate the absence of a fact issue as to that issue." Rizzo v. Children's World Learning Centers, Inc., 84 F.3d 758, 762 (5th Cir. 1996) *citing* Lindsey v. Sears Roebuck & Co., 16 F.3d 616, 618 (5th Cir. 1994). As is detailed below, Plaintiff cannot make the required showing here and, therefore, Plaintiff's Motion should be denied.

### B.   Plaintiff Is Not Entitled To Summary Judgment As To His FMLA Claim.

Plaintiff's Motion appears to allege a violation of Plaintiff's substantive rights under the FMLA. To prove a violation of his substantive rights under the FMLA, Plaintiff must establish: (1) he is an eligible employee under the FMLA; (2) GPC is an employer under the FMLA; (3) Plaintiff was entitled to leave under the FMLA; and (4) GPC engaged in some prohibited act. 29 U.S.C. 2611; Lambeth v. Edison Chouest Offshore, Inc., 1999 WL 679672 (E.D.La. Aug. 27,

1999)[3]; Blidy v. Examination Management Services, Inc., 1996 WL 568786 (N.D.Ill. Oct. 2, 1996); Spurlock v. NYNEX, 949 F.Supp. 1022 (W.D. NY 1996.) In Plaintiff's Motion, he never even attempts to show that he was entitled to leave under the FMLA. Such an attempt, even if made, would fail because Plaintiff is incapable of establishing that he requested or took an FMLA-qualifying leave. Moreover, Plaintiff has failed to show that GPC engaged in some prohibited act as is required to prove a substantive rights violation and, therefore, Plaintiff's Motion is properly denied.[4]

### 1. Plaintiff Has Not and Cannot Establish That He Was Entitled To Leave Under the FMLA.

In Plaintiff's Motion, he fails to show that he requested or took leave for an FMLA-qualifying event. Instead, after alleging that he is an eligible employee and GPC is a covered employer, Plaintiff states, "the final requirement is that [Plaintiff] must show that a covered family member suffers from a serious health condition,..." (Plaintiff's Motion, p. 11.) This is not the final requirement. See Lambeth, 1999 WL 679672 at *2. Simply establishing that someone in your family has a serious health condition says absolutely nothing about whether you have requested leave from work to care for that family member. Id. Indeed, as Plaintiff's testimony, his wife's Affidavit, and the July 12, 2000 letter from the Hospital establish, Plaintiff requested and took leave to baby-sit his three (3) healthy children, not for an FMLA-qualifying event.

As this Court is well aware, the FMLA allows an employee to take unpaid leave to, "care for an immediate relative with a serious medical condition." Ferrier v. Raytheon Corp., 1997

---

[3] All cases relied upon herein and containing a Westlaw citation were attached to Defendant's Motion for Summary Judgment as Attachment J and filed on July 2, 2002.

[4] GPC also takes the position that Plaintiff is not a qualified employee under the FMLA because he was not employed by GPC for 12 months preceding his leave in July 2000. See 29 C.F.R. § 825.208. There is no binding precedent in the Fifth Circuit that requires the inclusion of temporary employment when determining whether an employee qualifies under the FMLA. Based on this fact alone, GPC is entitled to summary judgment on Plaintiff's FMLA claim.

WL 411565 at *4 (E.D.La. July 18, 1997.); 29 U.S.C. § 2612(a)(1).  The FMLA, however, only covers child care leave if the child has a "serious health condition" as is defined under the act. 29 U.S.C. § 2612(a)(1); Evans v. Henderson, 2001 WL 109771 at * 2 (N.D.Ill. Feb. 5, 2001). More specifically, "the FMLA's leave entitlement simply does not extend to obtaining child care." Krohn v. Forsting, 11 F.Supp.2d 1082, 1092-93 (E.D.Mo. 1998); See also Evans, 2001 WL 109771 at * 2 (court found no FMLA violation holding that absences justified by babysitting problems are not protected under the FMLA); Marchischeck v. San Mateo County, 199 F.3d 1068 (9th Cir. 1999), cert. denied 530 U.S. 1214 (2000)(holding plaintiff did not establish entitlement to FMLA leave because plaintiff was not caring for a child with a serious health condition).

In the instant case, the undisputed facts demonstrate that when Plaintiff was absent from work on July 5, July 6, July 7 and July 10, 2000, he was not absent for a qualifying reason under the FMLA.  More importantly, there is no dispute over the fact that Plaintiff never even requested leave for a qualifying reason.  Specifically, On Wednesday July 5, 2000, after Plaintiff's son Calixto Briones became ill, Plaintiff's wife directed Plaintiff to ask GPC for time off work to care for his three (3) healthy children while Plaintiff's wife remained with Calixto Briones in the hospital.  (Edlyn Briones Affidavit, ¶ 7.)

On July 5, 2000, Plaintiff arrived at work and notified Mr. Bindom that he would need to be off work the following evening, Thursday July 6, 2000, because Plaintiff's son was in the hospital and, therefore, Plaintiff needed to stay home to care for his three (3) healthy children. (SMF ¶ 10; Plaintiff's Motion, p. 3.)  Plaintiff's wife further recalls that during a telephone call between Plaintiff and Mr. Dennis on July 10, 2000, Plaintiff told Mr. Dennis that he could not work that evening because Plaintiff had to stay home and care for his three (3) healthy children. (Edlyn Briones Affidavit, ¶ 23.)  A letter from Children's Hospital dated July 12, 2000 confirms

the reason for Plaintiff's leave stating, "While Mrs. Briones is in the hospital with Calixto [Briones], Mr. Briones has been making arrangements for the care of the other three children." (SMF ¶ 23.) At no point did Plaintiff tell any member of GPC management that he needed to be off work to care for Calixto Briones. (SMF ¶ 10.)

Given that Plaintiff has admitted that he requested and took leave from his evening shift with GPC because he was needed to care for his three (3) healthy children at home, Plaintiff was simply not out of work for an FMLA-qualifying leave. (SMF ¶ 11-12.) This point is only emphasized by the fact that on July 11, 2000, after Plaintiff was able to obtain a babysitter for his three (3) healthy children but while Calixto Briones was still hospitalized, Plaintiff went to work at GPC. (SMF ¶ 22.) Obviously, Plaintiff's babysitting concerns were the impetus for his leave from GPC and when he obtained a babysitter he attempted to return to work. *Id.* As such, Plaintiff cannot establish that he was entitled to leave under the FMLA. *See* Chaffin, 1998 WL 19624 at * 4 (plaintiff incapable of establishing that she was put on FMLA leave cannot make out a claim under the FMLA); Ferrier, 1997 WL 411565 at * 5 (plaintiff's failure to establish an FMLA qualifying reason for leave is not a protected party under the FMLA.)

## 2. **Plaintiff Has Not And Cannot Establish That GPC Engaged In Some Prohibited Act.**

Plaintiff's Motion similarly fails to prove the fourth necessary element of his substantive rights claim, that is, that GPC engaged in some prohibited act. Plaintiff's Motion claims that GPC engaged in a clear violation of its own FMLA policy because Mr. Bindom did not inform Ms. Rubio of Plaintiff's request for leave to care for his three (3) healthy children. (Plaintiff's Motion, pp. 12-13.) As should go with out saying, GPC's policy only comes into play if an employee puts GPC on notice that he or she is requesting an FMLA-covered leave. (Plaintiff's Motion, Ex. F.) As is detailed above, the testimony of both Plaintiff and his wife makes clear

that Plaintiff never actually requested leave from GPC for an FMLA-qualifying reason. (SMF ¶¶ 10, 23.)  In this regard, when an employee requests need for leave pursuant to the FMLA, the employee <u>must</u> state a qualifying reason for the needed leave.  <u>Manuel v. Westlake Polymers Corp.</u>, 66 F.3d 758, 762 (5th Cir 1995); 29 C.F.R. § 825.302; <u>Stoops v. One Call Communications, Inc.</u>, 141 F.3d 309, 313 (7th Cir. 1998).  A qualifying reason would include need for leave because of one's own serious health condition or leave needed to care for a relative with a serious health condition.  <u>Ferrier</u>, 1997 WL 411565 at *4; 29 U.S.C. § 2612(a)(1).

If an employee fails to "request leave within the meaning of the FMLA," he does not invoke protection under the statute.  <u>Seaman v. CSPH, Inc.</u>, 179 F.3d 297, 302 (5th Cir. 1999)(employee who informed his employer he may be suffering from bipolar disorder and needed time off to see a doctor failed to provide sufficient notice to employer to invoke protection of FMLA); <u>Chafin</u>, 1998 WL 19624 at * 6, n. 4 (in determining whether employee's notice is sufficient, the critical question is whether the employee requested time off work for a serious health condition); <u>Carter v. Ford Motor Co.</u>, 121 F.3d 1146, 1148 (8th Cir. 1997)(employee failed to give employer adequate notice of his need to take leave for his serious health condition); <u>Brohm v. JH Properties, Inc.</u>, 149 F.3d 517 (6th Cir. 1998)(while an employee need not mention the FMLA, the critical question is whether the employer was given information that employee's request for leave was for a serious health condition.)

In the instant case, Plaintiff asked for leave from work to baby-sit his three (3) healthy children. (SMF ¶¶ 11-12.) Plaintiff's wife directed Plaintiff to request leave for this purpose and confirms that she heard Plaintiff request leave to care for the three (3) healthy children.  (Edlyn Briones Affidavit, ¶¶ 7, 23.)  As such, Plaintiff never requested leave for an FMLA-qualifying reason and, therefore, GPC was under no obligation to grant Plaintiff an FMLA leave.  *See*

Brohm, 149 F.3d at 523 (nothing in the FMLA places a duty on an employer to grant an employee leave who has not provided a qualifying reason for the requested leave). Consequently, GPC could not have engaged in a violation of the statute, or its own policy for that matter, when it was never "reasonably apprised" that Plaintiff was requesting an FMLA-qualifying leave.   Satterfield v. Wal-Mart Stores, Inc., 135 f.3d 973, 980-81 (5th Cir. 1998)(employee who failed to give employer adequate notice of a need for FMLA-qualifying leave failed to establish FMLA violation); Gay v. Gilman Paper Co., 125 F.3d 1432, 1436 (11th Cir. 1997) (employee who failed to provide notice necessary to show FMLA entitlement has no viable FMLA claim.).  As such, Plaintiff has failed to show that GPC engaged in a prohibited act as is required to support his substantive rights claim and his Motion should be denied.

Moreover, Plaintiff was terminated for a legitimate reason having absolutely nothing to do with his request for time off to care for his three (3) healthy children.  (SMF ¶ 20.)  He was terminated for dishonesty.  Id.  If GPC believes that an employee has been dishonest, the employee is immediately terminated.  (SMF ¶ 25.)  In this regard, in addition to Plaintiff, GPC has terminated employees Eric Vance, Chris Drummond, Brett Bennett, Lansley Dixon, Sabrina Green, and Donald Lemoine for dishonesty.   (SMF ¶ 26.)  None of these employees had requested or been on a personal, medical, or FMLA leave prior to their termination for dishonesty.  Id.  In the alternative, numerous GPC employees at the Jefferson, Louisiana facility have requested and taken FMLA or medical leave and were subsequently returned to their prior positions at the conclusion of the leave. (SMF ¶ 30.)  Given the undisputed evidence, Plaintiff has not and cannot offer any evidence to show that GPC engaged in some prohibited act when he was legitimately terminated after the Company believed he had engaged in dishonest conduct. See Kenyon v. Western Extrusions Corp., 2000 WL 12902 at *8-9 (N.D.Tex Jan. 6,

2000)(employee offered no reliable evidence that employees who had not requested FMLA leave were treated more favorably than she.)  Plaintiff's inability to establish that he was entitled to leave under the FMLA or that GPC engaged in some prohibited act warrants a denial of Plaintiff's Motion.

## IV.   CONCLUSION

Plaintiff never even attempts to establish that he was entitled to leave under the FMLA. Such an attempt, even if made, fails because Plaintiff is incapable of establishing that he requested or took an FMLA-qualifying leave.  The testimony of Plaintiff, his wife, and the Hospital's July 12, 2000, letter, prove that Plaintiff requested and took leave to care for his three (3) healthy children while his wife remained in the hospital with Calixto Briones.  Plaintiff has also failed to show that GPC engaged in some prohibited act as is required to prove a substantive rights violation.  Here, Plaintiff failed to show he notified GPC of a need for FMLA-qualifying leave and, therefore, he cannot show that GPC somehow engaged in prohibited conduct by denying him such leave.  Finally, Plaintiff has not offered any evidence to support his claim that his termination was based on his leave.  Plaintiff was terminated for dishonesty and this is the same disciplinary action that has been administered to every other employee who GPC believed was dishonest.  As such, Plaintiff's Motion should be denied.

Respectfully submitted this _9_ day of July, 2002.

MARTENSON, HASBROUCK & SIMON LLP
By: _____
Marty N. Martenson
Georgia Bar No. 471100
Patricia E. Simon
Georgia Bar No. 618233
Suite 1500
100 Galleria Parkway, NW
Atlanta, GA  30339
(770) 818-4300

By: _____

**McCALLA PYBURN, LLP**
Edward F. Harold
La. Bar Roll No. 21672
Poydras Center, Suite 2800
650 Poydras Street
New Orleans, LA 70130
(504) 524-2499 Telephone
(504) 523-8679 Facsimile

**ATTORNEYS FOR DEFENDANT**

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JULIAN BRIONES, III, Individually | * | |
| and on behalf of his minor son, | * | CASE NO. 01-1792 |
| CALIXTO BRIONES, | * | |
| | * | |
| **Plaintiffs,** | * | SECTION B-1 |
| | * | |
| v. | * | |
| | * | JUDGE:    JAY ZAINEY |
| | * | |
| GENUINE PARTS COMPANY, | * | |
| d/b/a NAPA AUTO PARTS, | * | |
| | * | MAGISTRATE:    SALLY SHUSHAN |
| **Defendant.** | * | |

*************************************

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document entitled

**DEFENDANT GENUINE PARTS COMPANY'S OPPOSITION TO CLAIMANT'S MOTION FOR SUMMARY JUDGMENT,** has this day been sent by facsimile and placed in the United States mail, sufficient first class postage prepaid and affixed thereto and addressed as follows:

> Jeffrey T. Reeder
> 3723 Canal Street
> New Orleans, Louisiana  70119

This __9__ day of July, 2002.

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **JULIAN BRIONES, III, Individually** | * | |
| **and on behalf of his minor son,** | * | **CASE NO. 01-1792** |
| **CALIXTO BRIONES,** | * | |
| | * | |
| **Plaintiffs,** | * | **SECTION A-1** |
| | * | |
| **v.** | * | |
| | * | **JUDGE:    JAY ZAINEY** |
| | * | |
| **GENUINE PARTS COMPANY,** | * | |
| **d/b/a NAPA AUTO PARTS,** | * | |
| | * | **MAGISTRATE:    SALLY SHUSHAN** |
| **Defendant.** | * | |

## GENUINE PARTS COMPANY'S RESPONSE TO CLAIMANT'S STATEMENT OF UNCONTESTED FACTS

1.    Julian and Edlyn Briones were married in 1991.

**Response:**  Admitted.

2.    They live in LaPlace, Louisiana with their four children Linda age 9, Julie age 7, Jessica age 4 and Calixto age 3.

**Response:**  Admitted.

3.    They live around the corner from Julian's parents Linda and Julian Briones Jr., and Julian's sister Lisa.

**Response:**  Denied.  There is no record evidence cited or existing supporting this fact.

4.    Beginning in April 1999, Julian signed on to work with Temps Today, a local employment agency which provides employees on a temporary basis.

**Response:**  Denied as to timing.  Plaintiff's Application for Employment with GPC provides, in Plaintiff's handwriting, that Plaintiff was employed with Temps Today beginning in March of 1999.  (Plf. Dep., pp. 71-73; Ex. 3.)

1

5.    On May 5, 1999, Julian was assigned by Temps Today to work with defendant Genuine Parts Company d/b/a NAPA Auto Parts (hereinafter GPC) at the distribution center located on Shrewsbury Road in Jefferson, Louisiana.

**Response:** Admitted.

6.    From May 5, 1999 on, Julian drove delivery routes for GPC, and occasionally worked as a warehouseman.  He typically worked the graveyard shift, as all delivery [sic] were made at night.

**Response:** Admitted.

7.    On August 30, 1999, Julian was hired full-time by GPC to continue the exact same job he was doing while assigned to GPC by Temps Today.

**Response:** Denied as written.  Plaintiff completed an Application for Employment with GPC dated August 31, 1999 and, after completing certain paperwork and being drug tested, was hired by GPC in September of 1999.  (Plf. Dep., pp. 71-73, 77-78, 88-90, Ex. 3.)  In September of 1999, Peggy Rubio, Human Resources Manager, informed Plaintiff that he was hired.  (Plf. Dep., pp. 88-90.)

8.    Julian obtained health insurance though GPC.

**Response:** Denied in part.  Prior to September of 1999, Plaintiff did not receive any benefits from GPC.  (Plf. Dep., pp. 75-77.)  Plaintiff began receiving health insurance from GPC beginning in December of 1999.  *Id.*

9.    Julian eventually earned $1,148 gross every two weeks at GPC.

**Response:** Denied.  There is no record evidence cited supporting this fact.

10.   On July 1, 2000, Julian's sixteen month old baby son Calixto became ill.

**Response:** Admitted.

11.   On July 5, 2000 Calixto was admitted to Children's Hospital in New Orleans.

**Response:** Admitted.

12.   Edlyn Briones stayed at the hoptial with Calixto full time until his discharge on July 19.

2

**Response:** Admitted.

13.  Julian stayed at home at night with the other three children while Calixto was in the hospital.

**Response:** Admitted.

14.  Julian's mother Linda and father Julian Jr. have an adult mentally retarded child, Lisa, who lives in their home and requires 24 hour constant care and attention.

**Response:** Admitted.

15.  They run a Times Picayune paper route which requires them to be on the road from 2 a.m. to 7 a.m. each morning.

**Response:** Denied as written.  Plaintiff testified in his deposition that his father is retired but helps Plaintiff's mother deliver the papers in the evening.  (Plf. Dep., p. 31.)  Otherwise, the fact is admitted.

16.  Linda Briones has non-Hodgkins lymphoma.

**Response:** Admitted.

17.  Julian's mother was able to watch the children for short periods of time during the day, thus allowing him to go alone to the hospital.

**Response:** Admitted in part.  Admitted that Plaintiff's mother was able to watch the children for short periods of time during the day; however, Linda Briones' Affidavit does not provide that this was done so as to allow Plaintiff to go alone to the hospital.  Therefore, this portion of the fact is denied.

18.  On the evening of July 5, 2000, Julian reported to work for his usual shift.

**Response:** Admitted.

19.  On the morning of July 6, after working a full night shift, Julian contacted his supervisor David Bindom.

**Response:** Admitted.

20.    Julian told Bindom that his son was sick in the hospital, and that he would not be able to work his shift that (Friday) evening.

**Response:**   Denied as written.   Plaintiff has testified that he spoke with Mr. Bindom on Wednesday July 5, 2000, and told Mr. Bindom that his son was in the hospital and Plaintiff needed to stay home to care for his three (3) healthy children.   Plaintiff's deposition testimony provides as follows:

> Q:    You called David Bindom to request that day off, correct?
>
> A:    I told him on July 5th I requested the day off.
>
> Q:    On July 5th you spoke with Mr. Bindom?
>
> A:    Yes, I did.
>
> Q:    When did you speak to Mr. Bindom on July 5th about your need for July 6th off?
>
> A:    When I first arrived there.
>
> Q:    On July 5th when you spoke to Mr. Bindom, you told him that your son Calixto was in the hospital, and you needed to stay home and care for your other three children, correct?
>
> A:    Yes.
>
> Q:    Your other three children at the time that Calixto was in the hospital for that entire period were healthy.
>
> A:    The other three children, yes, they were.

(Plf. Dep., pp. 122-23.)

21.    About two hours later, Bindom called Julian's immediate supervisor Eddie LaPorte, and informed LaPorte that Julian's son was in the hospital, and that he would not be at work that evening.

**Response:**   Admitted in part.   On Thursday, July 6, 2000, Mr. Bindom called Mr. LaPorte at home and informed Mr. LaPorte that Mr. Briones would not be coming in to work that evening. Mr. Bindom informed Mr. LaPorte that the reason Mr. Briones would be absent from work was

4

because he had a son in the hospital and, therefore, he would need to stay home and baby-sit his three (3) other children. (Bindom Dep., pp. 12-14; Bindom Dec., ¶ 3; LaPorte Dec., ¶ 3.)

22.     On Friday July 7, Calixto Briones was diagnosed with acute dissemiminated encephalomyelitis, a condition which causes the brain to swell.

**Response:**  Admitted in part; however, no medical documentation is cited supporting the portion regarding causation.

23.     He lost all motor and communication skills developed to that date.

**Response:**  Denied.  No medical documentation is cited supporting this fact.

24.     GPC has a policy which requires the employee to call in before 11:00 a.m. (for night drivers) if that person is unable to show up for that night's shift.

**Response:**  Admitted.

25.     Julian called GPC on Friday July 7 prior to 11:00.

**Response:**  Denied in part.  Plaintiff testified in his deposition that on July 7, 2000, he contacted someone at GPC, but stated, "I can't remember exactly what time, but it should have been before 11:00 a.m." (Plf. Dep., pp. 132-33.)

26.     Julian was not scheduled to work on Saturday July 8 or Sunday July 9.

**Response:**  Admitted.

27.     Julian was not scheduled to work on Saturday July 8 or Sunday July 9.  Early on the morning of Monday July 10 while he was still at home, Julian received a phone call from his wife at the hospital asking him to bring diapers and Desitin when he came to the hospital later that day.

**Response:**  Denied.  Hospital records show that the hospital provided both diapers and Desitin; therefore, Plaintiff's wife would not have called Plaintiff to bring these supplies.

28.     On the way to the hospital, Julian stopped at Toys-R-Us, and called his wife from there asking if she needed anything else.

**Response:**  Denied.  Plaintiff testified in his deposition that on Monday July 10, 2000, he does not recall being anywhere other than at home, traveling from home to the hospital, or at the hospital.  (Plf. Dep., pp. 144-46.)

29.     Julian also called GPC, informing them that he would not be at work that evening.

**Response:**  Admitted.

30.     When Julian got to the hospital, his wife informed him that his mother Linda had called, stating that someone from GPC had called his home wondering where he was.

**Response:**  Denied in part.  The Affidavit for Edlyn Briones does not state that she informed Plaintiff that someone from GPC was "wondering where he was."  (Edlyn Briones Affidavit, ¶¶ 16, 18.)

31.     Julian called GPC from the hosptial and eventually spoke with Robert Dennis.

**Response:**  Denied.  GPC admits that Plaintiff had a telephone conversation on July 10, 2000 with Robert Dennis, but during that conversation, Plaintiff told Mr. Dennis he was at home, to which Mr. Dennis responded he could not be at home because Mr. Dennis was just on the phone with Plaintiff's mom.  (Rubio Dep., p. 23, Ex. 1; Dennis Dec., ¶ 6; LaPorte Dec., ¶ 8.)   Plaintiff asked Mr. Dennis if Mr. Dennis was calling Plaintiff a liar and Mr. Dennis responded that someone was not telling the truth.  *Id.*  Plaintiff does not recall the entirety of the telephone conversation on July 10, 2000 that he had with Mr. Dennis, and does not recall whether or not Mr. Dennis asked Plaintiff where he was calling from or if Plaintiff asked Mr. Dennis if he was calling Plaintiff a liar.  (Plf. Dep., p. 155-56.)

32.     Julian specifically requested Family Medical Leave, and stated that he would not be coming to work that day.

**Response:**  Denied in part.  Plaintiff's wife recalls that during this telephone call Plaintiff told Mr. Dennis that he could not work on the evening of July 10, 2000 because Plaintiff had to stay

home and care for his three (3) healthy children and allegedly stated he wanted "Family Leave." (Edlyn Briones Affidavit, ¶ 23.) Plaintiff's wife does not state that Plaintiff requested "Family Medical Leave." *Id.* Plaintiff alleged in his deposition that he mentioned "Family Leave" in his discussion with Mr. Dennis. (Plf. Dep., p. 154.)

33.    Mr. Dennis asked Briones to resign, to which Julian responded no.

**Response:**  Denied.  Even Plaintiff's deposition testimony provides that Mr. Dennis allegedly said, "If you are not coming in, are you resigning? I said, no, I'm not..." (Plf. Dep., p. 154.) This testimony does not state that Mr. Dennis asked Plaintiff to resign.

34.    On Tuesday, July 11 Julian arranged alternative evening care for his three children.

**Response:**  Admitted.

35.    On Tuesday, July 11, Julian reported to work at the usual time of 7:00 p.m.

**Response:**  Admitted.

36.    Upon arrival, he was immediately fired.

**Response:**  Admitted that when Plaintiff arrived at work on July 11, 2000, he had a meeting with Eddie LaPorte during which Mr. LaPorte informed Plaintiff he was being terminated for dishonesty. (Plf. Dep., p. 157; LaPorte Dec., ¶ 11.)

37.    The stated reason for termination was employee dishonesty.

**Response:**  Admitted.

38.    Julian discussed his termination with the social worker at Children's Hospital.

**Response:**  Admitted.

39.    The social worker arranged for a letter from Calixto's treating physician, Dr. Carmela Tardo, to be sent to GPC confirming Calixto's illness, and further confirming that Julian spent days at the hosptial and nights at home with the other children.

**Response:** Denied in part. The letter from Dr. Tardo does not state that Plaintiff spent days at the hospital. The letter provides in relevant part, "While Mrs. Briones is in the hospital with Calixto, Mr. Briones has been making arrangements for the care of the other three children." (Plf. Dep., Ex. 32.)

40.    GPC refused to rehire Julian.

**Response:** Admitted.

41.    Calixto Briones was discharged from Children's Hospital on July 19.

**Response:** Admitted.

42.    Upon discharge, he could not walk, could not use his right arm, and could not speak.

**Response:** Denied. Plaintiff has cited to no record or medical evidence in support of this fact.

43.    He was prescribed physical, occupational and speech therapy.

**Response:** Denied. No medical documentation is cited supporting this fact.

44.    Julian exercised his COBRA rights after termination from GPC, and therefore was able to obtain some therapy for his son.

**Response:** Admitted.

45.    The COBRA insurance lapsed after one month.

**Response:** Denied as written. Plaintiff's deposition testimony actually provides that Plaintiff's COBRA coverage was cancelled because Plaintiff failed to pay his premiums. (Plf. Dep., pp. 192-94.)

46.    Calixto was therefore denied necessary therapy at a very critical time in his recovery.

**Response:**   Denied.   As Plaintiff's deposition testimony provides, while he was living in Virginia in August of 2000, even while Plaintiff had the benefit of COBRA coverage through August 31, 2000, he did not take Calixto Briones for any therapy sessions. (Plf. Dep., pp. 187-

89.)ˑ Moreover, Plaintiff testified that Calixto Briones' therapy later resumed after Plaintiff obtained Medicaid coverage. (Plf. Dep., pp. 195-97.)

47.    Julian worked continuously at the GPC Jefferson Louisiana distribution center from May 5, 1999 though July 3, 2000.

**Response:** Denied as written. Plaintiff's deposition testimony provides that from May 5, 1999 until September of 1999, Plaintiff was an employee of Temps Today, assigned to GPC's Jefferson Louisiana facility. (Plf. Dep., p. 63; Ex. 3.) In September of 1999, Plaintiff was hired by GPC as a truck driver. (Plf. Dep., p. 89.) Plaintiff typically worked the nightshift, Monday through Friday, from September of 1999 until his termination in July of 2000. (Plf. Dep., pp. 104-05.)

48.    GPC is engaged in activity affecting commerce.

**Response:** Admitted.

49.    GPC employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year.

**Response:** Admitted.

50.    Calixto Briones suffers from a serious health condition.

**Response:** Denied. There is no evidence in the record that Calixto Briones currently suffers from a serious health condition, as the above fact is written.

51.    GPC has an FMLA policy.

**Response:** Admitted.

Respectfully submitted this _____ *9* day of July, 2002.

**MARTENSON, HASBROUCK & SIMON LLP**

By: _____

Marty N. Martenson
Georgia Bar No. 471100
Patricia E. Simon
Georgia Bar No. 618233
Suite 1500
100 Galleria Parkway, NW
Atlanta, GA 30339
(770) 818-4300

By: _____

**McCALLA PYBURN LLP**
Edward F. Harold  (#21672)
Poydras Center, Suite 2800
650 Poydras Street
New Orleans, LA 70130
Telephone: (504) 524-2499

**ATTORNEYS FOR DEFENDANT**

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JULIAN BRIONES, III, Individually | * | |
| and on behalf of his minor son, | * | CASE NO. 01-1792 |
| CALIXTO BRIONES, | * | |
| | * | |
| Plaintiffs, | * | SECTION B-1 |
| | * | |
| v. | * | |
| | * | JUDGE:    JAY ZAINEY |
| | * | |
| GENUINE PARTS COMPANY, | * | |
| d/b/a NAPA AUTO PARTS, | * | |
| | * | MAGISTRATE:    SALLY SHUSHAN |
| Defendant. | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document entitled

**DEFENDANT GENUINE PARTS COMPANY'S RESPONSE TO CLAIMANT'S**

**STATEMENT OF UNCONTESTED FACTS**, has this day been sent by facsimile and placed in

the United States mail, sufficient first class postage prepaid and affixed thereto and addressed as

follows:

> Jeffrey T. Reeder
> 3723 Canal Street
> New Orleans, Louisiana  70119

This **9** day of July, 2002.

11